820 F.2d 441
 26 ERC 1061, 261 U.S.App.D.C. 33, 8
Fed.R.Serv.3d 235,
17 Envtl. L. Rep. 21,104
 NEW MEXICO ex rel. ENERGY AND MINERALS DEPARTMENT, MINING
AND MINERALS DIVISION
v.
U.S. DEPARTMENT OF the INTERIOR, Donald P. Hodel, Secretary
of the Interior, and Jed Christianson, Acting
Director, Office of Surface Mining
Reclamation and Enforcement,
Intervening Defendants,
Navajo Tribe of Indians, Appellant,
National Coal Association American Mining Congress.
 No. 85-6165.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 27, 1986.
Decided June 5, 1987.
 
 1
 Appeal from the United States District Court for the District of Columbia (Civil No. 84-3572).
 
 
 2
 Paul E. Frye, Crownpoint, N.M., with whom M. Frances Ayer, Washington, D.C., was on brief, for appellant.
 
 
 3
 Martin W. Matzen, Atty., Dept. of Justice, with whom Robert L. Klarquist, Atty., Dept. of Justice, Washington, D.C., was on brief, for appellee, Dept. of Interior.
 
 
 4
 A. Raymond Randolph, Sp. Asst. Atty. Gen., for State of New Mexico, with whom Mary Ann Lunderman, Sp. Asst. Atty. Gen., Santa Fe, N.M., for New Mexico Energy and Minerals Dept., was on brief, for appellee, New Mexico Energy and Minerals Dept., Min. and Minerals Div., et al.
 
 
 5
 Jerome C. Muys, Denver, Colo., was on brief, for amicus curiae, Santa Fe Mining, Inc., urging the affirmance of the District Court's dismissal of the Counterclaim of the Navajo Tribe and the denial of the Navajo Tribe's motion for Preliminary Injunction.
 
 
 6
 Thomas C. Means, Washington, D.C., entered an appearance for Nat. Coal Ass'n and American Min. Congress.
 
 
 7
 Before MIKVA and BUCKLEY, Circuit Judges, and PARSONS, Senior District Judge.*
 
 
 8
 Opinion for the court filed by Senior District Judge PARSONS.
 
 
 9
 Concurring opinion filed by Circuit Judge MIKVA.
 
 PARSONS, Senior District Judge:
 
 10
 The Surface Mining Control and Reclamation Act (Surface Mining Act or Act), 30 U.S.C. sec. 1201 et seq. is a "comprehensive statute designed to 'establish a nationwide program to protect society and the environment from the adverse effects of surface mining operations.' " Hodel v. Virginia Surface Mining & Reclamation Association, Inc., 452 U.S. 264, 268, 101 S.Ct. 2352, 2356, 69 L.Ed.2d 1 (1981) (quoting sec. 102(a), 30 U.S.C. sec. 1202(a)). Title II of the Act creates the Office of Surface Mining Reclamation and Enforcement (OSM), within the Department of the Interior, and the Secretary of the Interior acting through OSM is charged with primary responsibility for administering and implementing the Act by promulgating regulations and enforcing its provisions. Sec. 201(c), 30 U.S.C. 1211(c). When Congress passed the Act in 1977, it left open the question of who was to exert regulatory authority under the Act over "Indian lands." Section 710, 30 U.S.C. sec. 1300. Instead, it directed the Secretary of the Interior to study and prepare a report on that question, and to submit the report to Congress along with proposed legislation. Id., sections (a) & (b). In September of 1984, the Secretary published final regulations concerning the regulation of surface coal mining on "Indian lands." Two months later, in November of 1984, this case began when the State of New Mexico brought a petition in the court below challenging the Secretary's regulations. Named as defendants were the United States Department of the Interior and its Secretary, and the Acting Director of OSM. Because the regulations were national in scope, exclusive jurisdiction to review them rested in the United States District Court for the District of Columbia. 30 U.S.C. sec. 1276(a)(1).
 
 
 11
 New Mexico challenged particularly a section of the regulations which provides for the exclusive regulatory authority of OSM over Indian lands. See 30 C.F.R. sec. 750.6(a)(1) (1986). On February 6, 1985 the Navajo Tribe of Indians moved under Fed.R.Civ.P. 24(a) for leave to intervene as a matter of right, and in March of 1985 filed its pleading. The Tribe was permitted to intervene as a defendant, and it requested that the regulations be upheld. The Tribe's answer to New Mexico's complaint denied that the State had any regulatory authority over surface mining and reclamation activities on Indian lands. The Tribe also filed a counterclaim requesting a declaratory judgment that certain lands in New Mexico are "Indian lands" under the Surface Mining Act and that New Mexico has no regulatory jurisdiction over surface coal mining on them. Its counterclaim went further to seek an injunction to prevent the State from exercising any authority over them. In April, two organizations, the National Coal Association and the American Mining Congress also were granted leave to intervene as defendants.
 
 
 12
 On June 7, the Tribe moved for summary judgment as to New Mexico's complaint. However, this motion was never resolved because on August 1, all of the parties except the Tribe entered into an agreement and jointly moved that the complaint be dismissed with prejudice. With their motion they submitted to the court their settlement agreement. On August 6, the district court concluded that dismissal was proper and entered its order dismissing the complaint. Several motions followed. The Tribe moved for reconsideration of the dismissal order. This was denied. It then moved for a preliminary injunction on its counterclaim. A hearing on that motion was held and the decision on it was taken under advisement. Next, New Mexico sought leave of court under Fed.R.Civ.P. 15(a) to amend its answer to the Tribe's counterclaim. This was allowed, and New Mexico filed an amended answer to the counterclaim raising Fed.R.Civ.P. 12(b) objections to it based on lack of jurisdiction and improper venue. Soon thereafter, New Mexico returned to move to dismiss the Tribe's counterclaim for want of jurisdiction. On September 30, the district court entered an order denying the Tribe's request for a preliminary injunction, and finally, on November 6, it dismissed the Tribe's counterclaim. The Navajo Tribe is here appealing from these three orders: the dismissal of New Mexico's complaint, the denial of the Tribe's motion for a preliminary injunction, and the dismissal of its counterclaim.
 
 
 13
 * The Tribe did not join the stipulation to dismiss New Mexico's complaint and the district court's dismissal of it had to come by court order pursuant to Fed.R.Civ.P. 41(a)(2). Dismissals under this Rule generally have been granted "unless the defendant would suffer prejudice other than the prospect of a second lawsuit or some tactical disadvantage." Conafay v. Wyeth Laboratories, 793 F.2d 350, 353 (D.C.Cir.1986). "The basic purpose of [the Rule] is to freely permit the plaintiff, with court approval, to voluntarily dismiss an action [as] long as no other party will be prejudiced ... in most cases a dismissal should be granted unless the defendant will suffer some legal harm." LeCompte v. Mr. Chip, Inc., 528 F.2d 601, 604 (5th Cir.1976) (citations omitted). A dismissal or a failure to dismiss is reviewable under an abuse of discretion standard. Conafay, 793 F.2d at 354. In the context of this appeal, we must determine if and how the Tribe may have been prejudiced by the dismissal in order to determine whether the district court abused its discretion in ordering the dismissal.
 
 
 14
 The Tribe claims to have been prejudiced by the district court's "approval" of the settlement agreement reached by New Mexico and the Department of the Interior and to which all of the other parties had stipulated. The part of that agreement pertinent to the Tribe's claim states:
 
 
 15
 The State of New Mexico will not contest the position of the Secretary of the Interior that he is the exclusive regulatory authority with respect to surface coal mining operations on Indian lands within the State. The Office of Surface Mining Reclamation and Enforcement shall issue an additional statement to the Preamble of the Final Rule governing regulation of surface coal mining operations on "Indian lands" situated within the State of New Mexico to clarify that the Secretary does not consider individual Indian allotted lands outside the exterior boundaries of the Indian reservation to be included in the definition of "Indian lands" contained in Section 701(9) of SMRCA, 30 U.S.C. Section 1291(9), and the implementing regulation at 30 C.F.R. Section 700.5.
 
 
 16
 (Emphasis added.)
 
 
 17
 The clarification to be published by the Office of Surface Mining Reclamation and Enforcement reveals part of the controversy between the Navajo Tribe and New Mexico. That part is whether allotments to individual Indians of lands which lie outside the undisputed boundaries of the Navajo Reservation are "Indian lands" over which the State may not regulate under the Surface Mining Act.[1] "Indian lands" are defined in the Act as
 
 
 18
 all lands, including mineral interests, within the exterior boundaries of any Federal Indian reservation, notwithstanding the issuance of any patent, and including rights-of-way, and all lands including mineral interests held in trust for or supervised by an Indian tribe.
 
 
 19
 Sec. 701(9), 30 U.S.C. sec. 1291(9). The same definition is set forth in the regulations promulgated by the Secretary. 30 C.F.R. sec. 700.5 (1986).
 
 
 20
 The "clarification" that the Secretary agreed to publish is not directed at either the statutory definition or the definition in the regulations. Instead, it is directed at "inadvertent and unintentional" language found in the preamble to the final regulations. (Affidavit of Murray Newton, Acting Chief for the Division of Regulation and Inspection, OSM, Joint Appendix 139, 140). The preamble stated in part:
 
 
 21
 It is not the intent of these regulations to amend the definition of Indian lands in the Act nor to resolve the various disputes between and among tribes and States. Rather, OSM is responsible for enforcing the law as it exists. Congress provided a definition of "Indian lands" in section 701(9) of the Act, which definition appears verbatim in 30 C.F.R. 700.5. The Federal Program promulgated here today applies to all "Indian lands" as that term is defined in the Act. Thus, OSM will continue to regulate as Indian lands all lands within the exterior boundaries of Indian reservations, allotted lands, and all lands where either the surface or minerals are held in trust for or supervised by an Indian tribe or individual Indians.
 
 
 22
 49 Fed.Reg. 38,463 (1984) (emphasis added). According to the Newton affidavit, the inclusion in this preamble of the two phrases we have emphasized was inadvertent and unintentional.
 
 
 23
 The Tribe argues that this is a correct explanation of the statutory definition of "Indian lands," and disagrees with the Secretary's agreement to publish the clarification recited in the settlement agreement. New Mexico argues that the inclusion of these phrases in the preamble improperly causes it to broaden the statutory definition of "Indian lands." But no matter who is correct, it is clear that neither the settlement agreement nor its recitations of the clarification to be published by the Secretary ultimately prejudices the Tribe. It was merely a settlement contract to which the Tribe was not a party.
 
 
 24
 "[P]arties who choose to resolve litigation through settlement may not dispose of the claims of a third party, and a fortiori may not impose duties or obligations on a third party, without that party's agreement." Local No. 93, International Association of Firefighters v. Cleveland, --- U.S. ----, 106 S. Ct. 3063, 3079, 92 L.Ed.2d 405 (1986). "A court's approval of a consent decree between some of the parties therefore cannot dispose of the valid claims of nonconsenting intervenors; if properly raised, these claims remain and may be litigated by the intervenor." Id. Especially since we do not have here a consent decree, this principle applies to defeat the Tribe's claim of prejudice. Only the parties who signed the settlement agreement are bound by the contract formed in it, and the court's approval of it in its exercise of discretion under Fed.R.Civ.P. 41(a)(2) does not serve to dispose of the Tribe's claims. The recitation in the settlement agreement that troubles the Tribe is the Secretary's commitment to a position concerning lands allotted to individual Indians which lands lie outside the boundaries of reservations. The Tribe's position on this issue had been ignored by the other parties, but the agreement does not preclude the Tribe from later challenging the correctness of the Secretary's commitment with relation to any regulations to be announced by him.
 
 
 25
 Further, the issues raised in the complaint that remain of particular concern to the Tribe were also raised by the Tribe in the counterclaim it filed, and under Fed.R.Civ.P. 41(a)(2) its counterclaim survived the dismissal of New Mexico's complaint. The Tribe has suffered no claim or issue preclusion by the dismissal of the complaint. It has not been prejudiced in a manner that would require reversal of the order of dismissal. The district court's dismissal of New Mexico's complaint therefore should be allowed to stand.
 
 II
 
 26
 The two remaining questions on appeal concern the district court's handling of the Tribe's counterclaim: its denial of the motion for a preliminary injunction and its dismissal of the counterclaim. Paragraph 3 of the counterclaim brought in focus the Tribe's dispute with New Mexico over certain additional lands which the Tribe claims should be included within the boundaries of the Navajo reservation. It claimed that:
 
 
 27
 Various lands within New Mexico are within the boundaries of the Navajo Indian reservation, and/or are supervised by the Navajo Tribe of Indians, including ... [c] All lands within the New Mexico portion of the addition to the Navajo reservation established by Executive Order # 709 of November 9, 1907, as amended by Executive Order 744 of January 28, 1908, and as confirmed by the Act of May 29, 1908, ch. 216, sec. 25, 35 Stat. 444, 457....
 
 
 28
 New Mexico's answer placed the matter at issue. The significance of this allegation is dual. First, if the reservation created by Executive Orders 709 and 744 was never dissolved and remains valid, then New Mexico, consistent with its settlement agreement and the regulations adopted by the Secretary, may not exercise authority over these lands under the Surface Mining Act. It is even more important from the Tribe's point of view that if the reservation status of the lands described in Executive Orders 709 and 744 is ever affirmed by judicial decree, not only will these lands be off limits to New Mexico under the Surface Mining Act, but the Navajo Tribe will be able to exercise its own authority over them to the fullest extent permitted by law. And before the Tribe can establish that New Mexico had no regulatory jurisdiction over these lands under 30 C.F.R. sec. 750.6 (1986), it will have to be established that such lands are "Indian lands" as defined in 30 U.S.C. sec. 1291(9) and 30 C.F.R. sec. 700.5 (1986). To establish these lands as Indian lands, the Tribe will have to prove the continuing validity of Executive Orders 709 and 744.
 
 
 29
 In seeking dismissal of the Tribe's counterclaim, New Mexico, unlike in its original petition seeking judicial review of national rules or regulations promulgated under the Surface Mining Act, argued that jurisdiction over the Navajo counterclaim was not conferred by 30 U.S.C. sec. 1276(a)(1) upon the United States District Court for the District of Columbia. Rather, New Mexico argued, the Navajo counterclaim alleging that it was violating the Surface Mining Act would have to be brought, like any other citizen suit, under section 1270(a), and that jurisdiction thereunder is placed only in "the judicial district in which the surface coal mining operation complained of is located." 30 U.S.C. sec. 1270(c). Alternatively, New Mexico argued that the court in the exercise of its discretion, should dismiss the Navajo counterclaim because of considerations of "fairness, convenience, and judicial economy."
 
 
 30
 In response, the Tribe claimed that Section 1270(c) is not a jurisdictional provision but one pertaining only to venue, and that New Mexico had waived any objection to venue by consenting to the Tribe's intervention and by failing to assert lack of venue as a defense in its original answer to the Tribe's counterclaim. The Tribe also argued that it is not a "person" within the meaning of the Surface Mining Act and that its counterclaim could not be considered a citizen suit under section 1270. Finally, the Tribe argued, even if its counterclaim were a citizen suit under section 1270, the court still had independent subject matter jurisdiction under 28 U.S.C. sections 1331 and 1362.
 
 
 31
 The district court correctly recognized the dual nature of the Navajo counterclaim. It concluded that venue over the Surface Mining Act claims was controlled by 30 U.S.C. sec. 1270(c) but that subject matter jurisdiction, based upon 28 U.S.C. sections 1331 and 1362, and independent of the citizens suits provision of the Surface Mining Act, gave it authority to consider and decide the counterclaim. See, e.g., Cheyenne-Arapaho Tribes v. Oklahoma, 618 F.2d 665, 666 (10th Cir.1980); 28 U.S.C. sections 1331 & 1362. The Court agreed with the Tribe that section 1270(c)(1) was a venue provision and not a jurisdictional provision, but it held that the section's plain language stating "that 'any action respecting a violation of this chapter ... may be brought only in [the district where the mining is located]' ... evidence[d] an intent on the part of Congress that parties not be allowed to waive this requirement." New Mexico v. United States Department of the Interior et al., No. 84-3572, mem. op. at 8 (D.D.C. Nov. 6, 1985) (emphasis in original) (quoting 30 U.S.C. sec. 1270(c)(1)). On the other hand, the Court was of the opinion that the reservation boundary issues arising by way of Executive Orders 709 and 744 were within its jurisdictional authority. It concluded, however, that the counterclaim should be dismissed because "there appear[ed] no logical reason for this Court to retain jurisdiction over it," id. at 9, after the problems requiring New Mexico's bringing of its complaint in the District of Columbia had been resolved.
 
 
 32
 Jurisprudence has long harmonized the principle of venue, general or special, with immutable tones of waiver, leaving the principle of venue dissonant with that of subject matter jurisdiction, which cannot be waived. Nierbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 167-68, 60 S.Ct. 153, 154, 84 L.Ed. 167 (1939); see also Leroy v. Great Western United Corp., 443 U.S. 173, 180, 99 S.Ct. 2710, 2714, 61 L.Ed.2d 464 (1979); Radzanower v. Touche Ross & Co., 426 U.S. 148, 151, 96 S.Ct. 1989, 1991, 48 L.Ed.2d 540 (1976); Michigan National Bank v. Robertson, 372 U.S. 591, 83 S.Ct. 914, 9 L.Ed.2d 961 (1963); In re Duncan, 713 F.2d 538 (9th Cir.1983); Libby, McNeill, and Libby v. City National Bank, 592 F.2d 504 (9th Cir.1978); C. Wright, Law of Federal Courts 169-70 (1976); 1 J. Moore, Moore's Federal Practice 1310-12 (2d ed. 1986). From time to time, Congress has selectively supplied special limitations for the adjudication of special subjects. See, e.g., 30 U.S.C. 1276, which directs that the review of regulations of nationwide scope promulgated under the Surface Mining Act take place in the District of Columbia, and which has been equated with a limitation of subject matter jurisdiction. Virginia ex rel. Virginia Department of Conservation & Economic Development v. Watt, 741 F.2d 37, 40-41 (4th Cir.), cert. granted, 469 U.S. 979, 105 S.Ct. 379, 83 L.Ed.2d 315 (1984), cert. dismissed, 469 U.S. 1198, 105 S.Ct. 983, 83 L.Ed.2d 984 (1985). Prior to the enactment in 1982 of 28 U.S.C. 1631, which expressly authorizes courts to transfer causes over which they lack subject matter jurisdiction to courts where jurisdiction properly may be exercised, courts were divided as to whether or not they had authority to transfer rather than dismiss cases over which they lacked power to adjudicate.[2] There is no doubt that the district court below had authority to transfer the Tribe's counterclaim, under 28 U.S.C. sec. 1631--authority it apparently did not consider using.
 
 
 33
 In view of the "express federal policy liberally allowing transfer of improper-venue cases," Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 467 n. 12, 95 S.Ct. 1716, 1723 n. 12, 44 L.Ed.2d 295 (1975), it would have been in the best interests of the parties and the courts to have effected a transfer of this case to the District of New Mexico as it stood after the dismissal of the complaint, rather than to force the parties and another court to begin it anew. See Livingston v. United States Department of Justice, 759 F.2d 74, 79 (D.C.Cir.1985). Once the matters that required the bringing of the complaint in the District of Columbia were resolved, a transfer of the remainder of the matter to New Mexico would place the litigation in the state where both parties are found and at the same time would honor Congress' preference for the locus of actions brought under section 1270(a).
 
 
 34
 It recently has been brought to our attention that one of the cases referred to by the district court below as being litigated in the Tenth Circuit Court of Appeals has been decided. In Navajo Tribe of Indians v. New Mexico, 809 F.2d 1455 (10th Cir.1987), the Tenth Circuit Court of Appeals affirmed its lower court's dismissal of the Tribe's "quiet title" action concerning the very lands put in issue by the Tribe's counterclaim here, holding that the quiet title action was time barred. Id. at 1470-71. However, the 10th Circuit observed that it was not determining the validity of Executive Orders 709 and 744 and the proper boundaries of the Navajo reservation. It concluded that the Tribe would be free to file a declaratory judgment action to obtain a judicial determination of those boundaries. Id. at 1475 n. 29. Here, the Tribe raised below this precise issue left undecided by the 10th Circuit.
 
 
 35
 In order to transfer the whole of the matter over which the court below lacked authority to act, we find it judicious to vacate the district court's denial of the Tribe's motion for a preliminary injunction, so that the transferee court will not consider itself bound by some constraint to the reasoning used or a result reached below. See, e.g., Mozee v. Jeffboat, Inc., 746 F.2d 365, 375 (7th Cir.1984). Prudence counsels that the transferee court be allowed to analyze on a clean slate the whole of the complex questions of fact and law raised by the Tribe's counterclaim. In addition, assuming the district court was correct in its conclusion that section 1270(c)(1) is jurisdictional, this being the import of the district court's suggestion that section 1270(c)(1) is a venue statute that cannot be waived, then the district court was without power to have reached as it did the merits of the Tribe's motion for a preliminary injunction. Under this circumstance it becomes necessary to vacate the district court's order denying the motion.
 
 
 36
 Accordingly, and in conclusion, we affirm the district court's order granting dismissal with prejudice of New Mexico's complaint; but we vacate its orders denying the Tribe's motion for preliminary injunction and dismissing its counterclaim, and return the counterclaim to the district court with instructions to effect its transfer to the District Court for the District of New Mexico.
 
 
 37
 MIKVA, Circuit Judge, concurring in the judgment and concurring in part:
 
 
 38
 I concur in the judgment of the Court and in Part I of the majority opinion. I disagree, however, with the rationale contained in Part II of that opinion. If the district court lacked jurisdiction over the counterclaim, as my brethren hold, I doubt this court's authority to return the counterclaim to the district court and direct that court to transfer the counterclaim pursuant to 28 U.S.C. Sec. 1631. I concur in the judgment because I believe that the district court had jurisdiction over the counterclaim by virtue of 30 U.S.C. Sec. 1270(a) and that although venue was improper under 30 U.S.C. Sec. 1271(c) (which is a venue provision rather than a jurisdictional provision and which may be waived by the parties), New Mexico waived its venue defense. The district court therefore erred in dismissing the counterclaim, and we must return it to the court. In doing so, we may suggest to the court that it use its authority under 28 U.S.C. Sec. 1404, which allows a court to transfer a case whenever the convenience of the parties and witnesses and the interest of justice so demands, to transfer the counterclaim to the District Court for the District of New Mexico.
 
 
 
 *
 Of the United States District Court for the Northern District of Illinois, sitting by designation pursuant to 28 U.S.C. sec. 294(d)
 
 
 [1]
 The Tribe is also concerned about the status of still other lands which it considers to be a part of its reservation. The State contests their status as reservation lands. The resolution of this disagreement, which in essence is a boundary dispute, is not necessary to our disposition of this first issue because it was not raised in New Mexico's complaint. However, it was raised in the Tribe's counterclaim, and it bears upon our resolution of the other issues raised by the Tribe
 
 
 [2]
 Compare Pearce v. Director, Office of Workers' Compensation Programs, 603 F.2d 763, 771 (9th Cir.1979) and Dayton Power & Light Co. v. EPA, 520 F.2d 703, 708 (6th Cir.1975) (courts have inherent power to transfer such cases) with Dantes v. Western Foundation Corp. Ass'n, 614 F.2d 299, 301 (1st Cir.1980), Panhandle Eastern Pipeline Co. v. FPC, 343 F.2d 905, 908 (8th Cir.1965), and Atlantic Ship Rigging Co. v. McLellan, 288 F.2d 589, 591 (3d Cir.1961) (courts lack power to transfer such cases)