Mattie W. **GRIFFIN**, Plaintiff,

v.

**ADMINISTRATOR, AGENCY FOR INTERNATIONAL DEVELOPMENT,** Defendant.

**Civ. A. No. 87–1956.**

United States District Court, District of Columbia.

July 13, 1988.

As Amended July 18, 1988.

---

Edward H. Passman, Passman and Broida, Washington, D.C., for plaintiff.

Robert E.L. Eaton, Jr., Asst. U.S. Atty., and on brief, Joseph E. DiGenova, Jay B. Stephens, U.S. Attys., and John D. Bates, Asst. U.S. Atty., Washington, D.C. (Jeffrey M. Borns, Attorney Advisor, Agency for Intern. Development, of counsel), for defendant.

CHARLES R. RICHEY, District Judge.

### Introduction

Plaintiff was employed as the Chief of the Agency for International Development's (AID) Travel Support Branch. In August, 1978, she filed a formal complaint charging AID with sex, race, and color discrimination. Plaintiff revised this complaint in July, 1980.

On January 22, 1982, the parties entered into a agreement settling plaintiff's complaint. The agreement stated that it was the "full and final settlement" of both plaintiff's revised complaint and an unspecified complaint then in the counseling stage. *Administrative Record* 2.[1] Plaintiff agreed to abandon her complaints in exchange for the Agency's agreement "to arrange for a classification audit of the duties and responsibilities of the positions occupied by the complainant in SER/MO[2] since February 9, 1975." The agreement further stated that "[t]he audit will be carried out by the Office of Personnel Management (OPM) as soon as possible." *Id.*

The agreement also stated that both parties "mutually agree to abide by the findings of the audit." *Id.* The Agency

---

1. The Administrative Record filed by defendant on November 2, 1987, was neither paginated or otherwise indexed. For the purposes of easier reference, the Court has itself paginated the document and will refer to the Administrative Record according to those page numbers.

2. While it is not clear from the record, "SER/MO" appears to be an abbreviation for AID's Directorate for Program and Management Services, Office of Management Operations. *See Administrative Record,* at 34–35.

agreed to promote plaintiff retroactively if the audit determined that her position had been improperly classified; plaintiff agreed to "accept the findings of the audit in full and complete satisfaction of the complaints" she had filed, regardless of her satisfaction with the audit itself. *Id.*

On September 22, 1982, the Office of Personnel Management issued its "advisory classification opinions" concerning the classification of plaintiff's positions from 1975 through September 1982. *Administrative Record*, at 3. OPM found that, although the job descriptions for positions plaintiff occupied were inadequate, the positions had been properly classified. *Id.* at 24. Plaintiff apparently did not ask OPM to reconsider its opinion but returned to AID, where she charged that the OPM investigation was flawed and asked AID to reopen her complaint. *Id.* at 48–49. AID refused to do so, and instead issued a final agency decision finding that the agency had fully complied with the terms of the settlement agreement. *Id.* at 49.

On February 23, 1983, plaintiff filed suit in this Court and challenged the position classification. On May 23, 1983, plaintiff dismissed the case, without prejudice, in order to ask the OPM Classification Appeals Office to review the classification of her job position. *Id.* at 31. In a decision that explicitly stated it was based on plaintiff's *then-current* duties, *and not on duties plaintiff had performed in the past, id.*, the Classifications Appeals Office found that plaintiff's current duties were improperly classified and upgraded her position from the GS–8 level to the GS–9 level. *Id.*

Plaintiff then asked AID to reopen the discrimination complaints that had been the subject of the settlement agreement. Plaintiff argued that the decision of the Classification Appeals Office was not based on new duties and assignments but represented a review and rejection of OPM's prior "advisory classification opinions" that had approved the classification of plaintiff's position. *Id.* On May 17, 1985, AID rejected plaintiff's request. Plaintiff appealed to the Equal Employment Opportu-

nity Commission's Office of Hearings and Appeals.

On July 31, 1985, plaintiff filed another discrimination complaint. The defendant rejected this complaint on September 5, 1985, as it found that the complaint raised matters identical to those raised in the 1978 complaint. Plaintiff appealed this decision to the EEOC's Office of Review and Appeals, which consolidated this action with plaintiff's earlier-filed appeal. On June 17, 1987, the Office of Review and Appeals issued a final decision finding that the agency had fully complied with the settlement agreement, had acted properly in refusing to reopen plaintiff's 1978 complaint, and had properly rejected plaintiff's 1985 discrimination complaint as raising matters identical to those raised in the 1978 action. *Id.* at 47–53.

Plaintiff thereupon brought this suit asking for reinstatement of her discrimination and reprisal complaints. Now before the Court are cross-motions for summary judgment. The Court has considered the motions, the legal memoranda submitted by both parties, the administrative record, the arguments presented in open court, and the underlying law. The Court finds that the material facts are undisputed and that summary judgment is appropriate in this case. *See* Fed.R.Civ.P. 56; *see also, e.g., Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court further finds that it must grant defendant's motion for summary judgment in part and deny that motion in part; it must also grant plaintiff's motion for summary judgment in part and deny plaintiff's motion in part.

DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO ALL CLAIMS THAT WERE SUBJECT TO THE 1982 SETTLEMENT AGREEMENT.

The terms of the Settlement Agreement are clear. Under that Agreement, the agency:

> agrees to arrange for a classification audit of the duties and responsibilities of the positions occupied by the complainant

in SER/MO since February 9, 1975. The audit will be carried out by the Office of Personnel Management (OPM) as soon as possible. The Agency will take all measures possible to expedite the audit.

The Agency and the complainant mutually agree to abide by the findings of the audit.

*Administrative Record* at 2. At oral argument, the parties agreed that defendant did not undertake any obligations toward plaintiff other than those spelled out in this agreement.

Like any settlement agreement, this agreement was an enforceable contract; absent a breach by defendant, plaintiff is bound by her consent to the settlement. *See, e.g., New Mexico ex rel Energy and Minerals Department v. Department of the Interior,* 820 F.2d 441, 445 (D.C.Cir. 1987); *Autera v. Robinson,* 419 F.2d 1197, 1201 n. 17 (D.C.Cir.1969). From the facts of this case, it is clear that defendant did not breach the agreement.

The Settlement Agreement was signed on January 22, 1982. *Administrative Record,* at 2. On September 22, 1982, the Office of Personnel Management issued "advisory classification opinions" finding that plaintiff had been properly classified as a GS–7 employee from February 9, 1975 through November 29, 1981, and as a GS–8 employee from that date forward. *Id.* at 6–24. At oral argument, the parties agreed that these "advisory classification opinions" constituted the audit required by the settlement agreement. Accordingly, it is obvious that AID did exactly what the express terms of the settlement agreement contemplated: it arranged for an audit, which occurred as quickly as the bureaucracy can reasonably be expected to operate.

■ Plaintiff suggests that the agreement was breached in several respects. First, plaintiff takes issue with the substantive findings of the "advisory classification opinions." This she may not do. Under the terms of the settlement agreement, plaintiff is bound by OPM's findings. *Id.* at 2. Thus, the agreement expressly bars any appeal of OPM's substantive findings and plaintiff may not ask the Court to

find that OPM's decision was substantively erroneous. *See, e.g., Autera v. Robinson,* 419 F.2d at 1201 n. 17.

■ Next, plaintiff argues that OPM did not conduct the audit properly. Even if true, this contention does not constitute grounds for a finding that defendant has breached the settlement agreement or, indeed, for any suit against this defendant. As this defendant neither undertook the audit nor guaranteed that the audit would be conducted properly, it cannot be liable for any shortcomings in the conduct of the audit.

■ Finally, plaintiff argues that the "advisory classification opinions" were merely interim findings, not OPM's final "audit." The final decision, plaintiff maintains, was issued by OPM's Classification Appeals Office on March 12, 1984, and found that plaintiff's position had been improperly classified. Thus, plaintiff maintains, OPM actually found that her position was improperly classified and defendant breached the settlement agreement by refusing to reclassify her job. Plaintiff is incorrect.

■ The content of OPM's 1984 decision belies plaintiff's claims. In that decision, the Classification Appeals Office made clear that its findings were based *only* upon "duties which [were] *currently* assigned and performed" at the time the decision was rendered. *Id.* at 31. The decision did *not* consider the propriety of the classification of plaintiff's duties from 1975 through 1982—in other words, the Classification Appeals Office did not consider the propriety of the classification of the duties that were the subject of the 1982 "advisory classification opinions." As such, it is clear that the 1984 decision did not revise or reject the 1982 "opinions;" the 1984 decision neither directly nor indirectly involved those opinions. Rather, the 1984 decision was a new and independent finding that the job plaintiff was occupying *in 1984* had been wrongly classified.

The source of plaintiff's confusion is not difficult to discern; the problem lies in the phrase "advisory classification opinion."

Defendant maintains that the only reason OPM termed its conclusions "advisory classification opinions," and not a "classification audit," was that OPM was "advising" another agency of the propriety of its job classifications. Whether or not this was the reason for the nomenclature, the undisputed evidence is that the 1982 "opinions" were the "audit" called for in the settlement agreement.

This view is not based on the content of the "opinions" alone. It is bolstered by OPM's own 1983 statement that it had "conducted the audit" called for in the settlement agreement. *Id.* at 25. The undisputed evidence is that the *only* action undertaken by OPM prior to issuing this statement, and thus the only finding that could possibly qualify as this "audit," was the 1982 "advisory classification opinions." Plaintiff's speculations to the contrary have no force on a summary judgment motion; the undisputed evidence shows that the 1982 "opinions" were the binding "audit" that defendant agreed to facilitate.

In short, plaintiff has advanced a number of theories to support her contention that she is entitled to raise claims that were resolved by the 1982 settlement agreement. None of those theories offers plaintiff a means of prevailing in this suit. As to all claims for race, sex, and color discrimination from 1975 through January 22, 1982, defendant is entitled to summary judgment.

### DEFENDANT IS ENTITLED TO PARTIAL SUMMARY JUDGMENT WITH RESPECT TO THE 1985 COMPLAINT, BUT EQUITY DEMANDS THAT THE COURT REINSTATE THAT COMPLAINT IN PART.

On July 31, 1985, plaintiff filed another discrimination complaint. In that complaint, plaintiff charged that "on or about July 1, 1980 and continuing until present, [her] position has been misclassified due to my race, sex, age, physical handicap and in reprisal for prior EEO complaints." *Id.* at 43. The agency rejected this complaint as raising issues identical to those disposed of by the 1982 settlement agreement, *id.* at 44–46, and the EEOC upheld the agency's determination, *id.* at 52–53. Plaintiff argues that defendant erred by rejecting that complaint, but the Court must conclude that plaintiff is wrong. The Court will, however, follow the commands of equity and permit reinstatement of that portion of plaintiff's 1985 complaint that was not precluded by the settlement agreement.

The agency and, on appeal, the EEOC rejected the complaint because it concluded that plaintiff was not bringing a new discrimination complaint but was attempting to reopen the complaint that was the subject of the settlement agreement. *Id.* at 45–46, 52–53. Certainly plaintiff may not reopen settled claims by renewing them under the guise of continuing discrimination. *See, e.g., McKenzie v. Sawyer,* 684 F.2d 62, 72 (D.C.Cir.1982); *Stoller v. Marsh,* 682 F.2d 971, 975 (D.C.Cir.1982), *cert. denied,* 460 U.S. 1037, 103 S.Ct. 1427, 75 L.Ed.2d 787 (1983). To the extent that plaintiff's 1985 complaint simply charged that her position was misclassified from 1975 through September, 1982, defendant properly rejected that complaint.[3]

This is not to say, however, that plaintiff may never recover for discrimination she may have suffered at defendant's hands. It should go without saying that the 1982 settlement agreement did not prevent plaintiff from bringing a complaint if she experienced discrimination thereafter. Although the agency logically read plaintiff's 1985 complaint as charging the agency with discrimination that began in 1980 and continued until the date the complaint was filed, the agency could not have rejected any complaint alleging that defendant discriminated against plaintiff on or after January

---

**3.** The Court must note that plaintiff's additional charge of discrimination on the basis of physical handicap does not pose a problem for defendant. This new claim cannot afford plaintiff any additional grounds for relief: what she seeks in her complaint is proper classification of her position, and OPM found that plaintiff's position was *properly* classified from 1975 through 1982. *Administrative Record* at 3–24.

23, 1982.[4] *See, e.g., Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 52, 94 S.Ct. 1011, 1021, 39 L.Ed.2d 147 (1974).

Thus, if the Court were fully to grant defendant's motion for summary judgment with respect to the 1985 complaint, plaintiff might be able to file a new complaint charging defendant with discrimination from the day after the settlement agreement was signed—January 23, 1982—forward. In order to do so, however, plaintiff would have to show that the continuing acts of discrimination of which she complained in 1985 continued through the present day. *See, e.g., McKenzie v. Sawyer,* 684 F.2d 62, 72 (D.C.Cir.1982); *Valentino v. United States Postal Service,* 674 F.2d 56, 65 (D.C.Cir.1982). If these acts did not "continue," within the meaning specified at law, plaintiff's complaint would face dismissal as untimely filed. *E.g., id.*

The Court does not know if plaintiff can prove these continuing acts or not. Instead, it appears that plaintiff's administrative complaint may have created an unfortunate situation: because she charged defendant with discrimination that predated the settlement agreement, defendant was within its rights to refuse to consider her legitimate allegations of post-settlement agreement discrimination as well. If plaintiff has to refile her complaint, and cannot show discrimination continuing through the present day, she will be unable to recover for any discrimination she actually experienced from January 23, 1982, through the date her 1985 administrative complaint was filed.

The Court is concerned that justice be done. Title VII and its accompanying anti-discrimination statutes are equitable in nature; they are designed to serve justice and will not tolerate any elevation of form over substance. *See, e.g., Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1980) Most important, as lay persons initiate the administrative process,

technical imperfections in administrative complaints cannot defeat an individual's right to redress for discriminatory acts. *Id.* This principle clearly points the way toward the equitable outcome in this case.

The Court cannot allow plaintiff's improperly worded administrative complaint to deprive her of all possibility of a remedy for discrimination that she may have suffered. Equity commands the Court to allow plaintiff to proceed on her complaint as if it charged defendant with acts of continuing discrimination from January 23, 1982, onward. If the Court acted in any other fashion, neither law nor equity would be well served. Accordingly, the Court will order reinstatement of a portion of the 1985 complaint so that the agency may determine whether plaintiff's position was misclassified as a result of continuing discrimination from January 23, 1982, through the date that complaint was filed.

## CONCLUSION

In this case, it is clear that plaintiff has, in part, attempted to evade the consequences of a settlement agreement into which she voluntarily entered in 1982. By the express terms of that agreement, plaintiff is bound by the results of a classification audit that was conducted by the Office of Personnel Management. The Court can offer plaintiff no relief from that audit simply because she disputes its results. Nor can plaintiff seek a remedy in this suit for any flaws she perceives in the process by which OPM conducted the audit.

By the same token, however, the Court cannot penalize plaintiff for filing a new administrative complaint that was defective because it charged defendants with alleged acts of discrimination that were resolved through the settlement agreement as well as alleged acts of discrimination that occurred after the agreement was signed. While this complaint was undoubtedly de-

---

**4.** OPM's classification opinions examined plaintiff's job classifications from 1975 through "the present," and were dated September 22, 1982. *Administrative Record* at 3. Nonetheless, the settlement agreement could extinguish plaintiff's claims only through the date on which it was signed, which was January 22, 1982. *Id.* at 2. *See, e.g., Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 52, 94 S.Ct. 1011, 1021, 39 L.Ed.2d 147 (1974) (agreement may not prospectively waive employee's Title VII rights).

fective, plaintiff unarguably has a right to challenge alleged discriminatory conduct that occurred after she settled her earlier complaint. Because of potential statute of limitations problems, equity counsels the Court to allow plaintiff to proceed on her 1985 complaint as if it properly charged defendant only with post-settlement agreement discrimination. The Court will do so.

The Court will enter an Order, of even date herewith, memorializing these findings.

## ORDER

In accordance with the Opinion in the above-captioned case, issued of even date herewith, it is this 12th day of July, 1988,

ORDERED that defendant's motion for summary judgment shall be, and hereby is, granted with respect to the January 22, 1982 settlement agreement, plaintiff's 1978 and 1980 administrative complaints, and those portions of plaintiff's 1985 administrative complaint concerning any and all acts of discrimination that occurred prior to January 23, 1982; and it is

FURTHER ORDERED that plaintiff's motion for summary judgment seeking reinstatement of her administrative complaints shall be, and hereby is, granted with respect to that portion of plaintiff's 1985 administrative complaint charging defendant with continuing acts of discrimination from January 23, 1982, onward; and it is

FURTHER ORDERED that plaintiff's motion for summary judgment shall be, and hereby is, denied in all other respects; and it is

FURTHER ORDERED that defendant shall reinstate that portion of plaintiff's 1985 administrative complaint charging it with continuing acts of discrimination that allegedly began on January 23, 1982; and it is

FURTHER ORDERED that this case shall be, and hereby is, dismissed from the docket of this Court, without prejudice to plaintiff's right to bring suit as to matters that may arise out of defendant's process-

ing of and decision on the reinstated portion of plaintiff's complaint.