ALLEY, Senior District Judge,
dissenting:
I respectfully dissent from Judge Luce-ro’s carefully researched and well drafted opinion because I view this appeal very differently from my colleagues, even as to the nature of the issue presented. The fundamental difference arises from my consideration of the procedural history of the case below. I believe intervenors’ allegation that there was no legal or factual basis for the County’s settlement decision should be ignored, and the district court substantially affirmed.
Long before litigation began, Public Service Company of New Mexico (“PNM”) pursued lengthy administrative processes in federal and state forums to obtain approval of the Norton-Tesuque Project. The project involved construction of an electrical power substation and a transmission line spanning approximately ten miles, which included tribal land, federal land, and less than three-quarters of one mile of privately-held land located within the County of Santa Fe, New Mexico. Private landowners, who are appellants here, were parties to state proceedings before the New Mexico Public Utility Commission. In fact, they initiated those proceedings by petitioning for an investigation and a stay of construction in September 1995. The landowners succeeded in obtaining a stay and a lengthy investigation, but the investigation culminated in a recommended decision by a hearing examiner in August 1998 that the project should be allowed to proceed. (Appellants’ App. at 212-15, 285-315.) The Commission rejected the landowners’ objections to the recommended decision and adopted it as a final order in October 1998. (Appellants’ App. at 216-19.) The County also appeared in the state administrative proceeding by filing in September 1998 an unsuccessful motion to intervene and objections to the recommended decision. (Appellants’ App. at 216-17, 243-47.)[1]
The case below began as a state court action brought by the County against PNM on December 8, 1998, to enforce the Santa Fe County Land Development Code. In particular, the County alleged a violation of Ordinance No.1998-15, an amendment to the Code adopted on November 24, 1998, “requiring among other things, that all transmission lines in the County be buried underground, unless otherwise permitted by the County Commission, that the terrain management regulations in the Code be satisfied when constructing a transmission line, and that all utility companies obtain a development permit from the County prior to the construction of any transmission line.” (Appellants’ App. at 20.) The action was triggered by an observation by a code enforcement officer a day earlier that “PNM [was] constructing *1051 a transmission line within the County ... on federal Bureau of Land Management land” and was based on a position that PNM’s construction must comply with the County’s regulations “even when that construction occurs on federal lands.” (Appellants’ App. at 21.) With the complaint, the County filed a motion for an injunction to halt PNM’s construction. (Appellants’ App. at 24.) The case followed a tortured procedural history that need not be detailed here, but the case finally was removed to federal court and remained there after the County added the United States as a necessary party defendant.
Early in the removed proceedings, appellants moved to intervene in the case. The district court granted the motion on January 31, 2000. Within days, on February 2, 2000, the original parties (the County, PNM and the United States Department of Interior, Bureau of Land Management) jointly moved for voluntary dismissal with prejudice of the action based on a written settlement agreement between the County and PNM to compromise them claims and counterclaims against each other. (Appellants’ App. at 130-40.) Appellants subsequently filed them complaint in intervention alleging in part that the County should be compelled by writ of mandamus to enforce its Code, particularly Ordinance No.1998-15, and to prosecute father than dismiss its enforcement action. (Appellants’ App. at 141-54.) Appellants also filed a lengthy brief with numerous exhibits in opposition to the other parties’ motion for voluntary dismissal. (Appellants’ App. at 155-257.) The County and PNM submitted a reply brief, also lengthy and accompanied by many exhibits, in further support of their motion to dismiss. (Appellants’ App. at 258-341.) In August 2000, the district court overruled the intervenors’ objections to dismissal of the main action, granted the motion for voluntary dismissal, and issued an order of dismissal that both approved the settlement agreement and terminated the litigation among the original parties. (Appellants’ App. at 342-53.) While this ruling was made without an evidentiary hearing requested by the in-tervenors, it was made with full knowledge of the procedural history of the case and of evidence presented in prior hearings, the parties’ voluminous briefs, and their documentary submissions.
Following the voluntary dismissal, the intervenors filed an amended complaint in intervention. PNM then moved to dismiss this complaint under Fed.R.Civ.P. 12(b)(6) on the ground that it was “premised on an incorrect interpretation of the Santa Fe County Land Development Code.” (Appellants’ App. at 471.) Following oral argument in January 2001, the district court granted PNM’s motion and dismissed the intervenors’ amended complaint for failure to state a claim. In so doing, the district court specifically acknowledged the restrictive standard of decision under Rule 12(b)(6) but reasoned that the intervenors’ allegations were not binding as to legal issues. Concerning the mandamus claim, the district court concluded that the County’s settlement posture “was a discretionary act of the county” and, as to the nuisance claims, “this would [njever be found to be a nuisance.” (Appellants’ App. at 587-88.) Appellants challenge both dismissals, of the original action and their amended intervention complaint.
The focus of the intervenors’ appeal is the district court’s dismissal of their mandamus claim seeking to compel the County to enforce its ordinances through prosecution of its enforcement action against PNM to the bitter end. As I read the opinion, the majority concludes that the district judge erred in dismissing this claim because he failed to accept as true an allegation in the intervenors’ prolix pleading that *1052 the County lacked any factual or legal basis for its settlement decision and because, depending on the facts, the County may have a ministerial duty to enforce its Code against PNM’s construction project. The intervenors’ allegation that the settlement agreement lacked a factual or legal basis had been presented before, however, in opposition to the motion for voluntary dismissal. (Appellants’ App. at 156) (“The Motion to Dismiss ... presents no factual or legal basis for the settlement.”) The intervenors received an opportunity to be heard on this issue but lost. The district judge rejected this contention by overruling their objections, approving the settlement, and permitting voluntary dismissal of the enforcement action. He entered an order of dismissal that incorporated the settlement agreement executed by the County and PNM and expressly found that Ordinance No. 1998-15 did not apply “because construction of the Norton-Tesuque Project was begun prior to passage of said ordinance” and that a county development permit was not required for the project. (Appellants’ App. at 351.) Intervenors made no attempt contemporaneously to appeal these findings.
In short, the intervenors’ conclusory averment in the amended intervention complaint carries no force. It is contrary to the district judge’s implicit finding, which is fully supported by the record in existence at the time of his decision, that the County did in fact have a valid basis for its decision not to litigate further against PNM.[2] More importantly, however, the County is in a better position than a federal court to interpret and apply its own ordinances. A determination by the County that its undergrounding and permit requirements were inapplicable to the project, in itself, provides a lawful basis for the settlement decision. The district judge’s acceptance of this determination further demonstrates the existence of a genuine dispute in litigation positions and, at the least, establishes an arguable basis for a compromise of the enforcement action that prevents issuance of the mandamus relief sought by the intervenors.
The intervenors were understandably concerned that the settlement agreement stated a particular position regarding the applicability of the Code. Regardless of the correctness of this position, however, appellants ultimately are not bound by it because they were not parties to the settlement contract. See, e.g., New Mexico ex rel. Energy and Minerals Dep’t v. United States Dep’t of Interior, 820 F.2d 441, 444-45 (D.C.Cir.1987) (a settlement agreement between state and federal officials that adopted a particular definition of “Indian lands” was not binding on an interve-nor tribe, who could continue to litigate its claims on the issue).
Moreover, in my view, the majority poses the wrong enforcement question. The County has already initiated (and concluded, if the voluntary dismissal stands) its enforcement action against PNM. The question presented is whether under the law the County’s settlement decision was *1053 one that it had discretionary authority to make. In answering this question, I see no need to determine whether any county ordinances in fact applied to the project or whether the County’s change of position in the litigation was a wise move. The premise of a settlement and compromise is that each party has an arguable position that it agrees to give up in exchange for an expeditious, inexpensive, and amicable resolution of the matter. Whether the County’s original legal position was in fact correct or whether it might ultimately have prevailed in the litigation is not dispositive or even material. The record before the district court clearly showed the existence of arguable legal positions in this case, in which the County and PNM asserted claims and counterclaims against each other concerning their opposing interpretations of county ordinances. By a simple allegation of “no factual or legal basis” for the settlement, intervenors could not have stricken the district court blind as to what the Public Utility Commission and the district court had already decided. It is one thing for intervenors to assert that.the district court was wrong, but another thing to accept as true an assertion that the district court does not know a genuine dispute when it sees one. I am persuaded by appellees’ arguments that the County has prosecutorial discretion with regard to enforcement actions and that its' litigation position cannot be dictated by concerned citizens or the courts.
As to appellants’ challenge to the district court’s dismissal of the original action, I do not disagree with the principle stated in the majority opinion that a district court would abuse its discretion in permitting a voluntary dismissal with prejudice of claims between some parties based on a settlement between them if the dismissal would cause legal prejudice to another party. I also share the majority’s view that neither res judicata nor collateral estoppel would later bar the intervenors claims because they were not parties to the settlement. (Slip op. at 37.) I differ with the majority’s conclusion that this case presents the rare circumstance where dismissal of the plaintiffs claims would adversely impact another party. The majority finds that the district judge abused his discretion in granting the Rule 41(a)(2) motion because he failed to appreciate the resulting legal prejudice to the intervenors’ pending mandamus claim against the County. His ruling effectively “immunized PNM against any future suit by the County related to the powerline project, and therefore made it impossible for interve-nors to obtain the relief sought under their writ of mandamus cause of action.” (Slip op. at 37-38.) This presupposes that the complaint in intervention stated a viable claim for a writ of mandamus against the County. As explained above, I conclude that it did not.
Finally, as to the majority’s discussion of the intervenors’ nuisance claims, I agree that factual issues preclude resolution on a motion under Rule 12(b)(6) whether PNM had “due authorization” for the project. Thus, dismissal of these claims was premature. I do not agree that the project could not be a “public works project” because PNM is a private corporation. (Slip op. at 33.) Under New Mexico statutes, PNM is a “public utility.” N.M. Stat. Ann. § 62-3-3 (Miehie 1978).

. The landowners' appeal to the New Mexico Supreme Court from the Commission’s order approving the project was pending in December 1998 when the County filed suit, but re-suited in an adverse decision affirming the Commission in January 2000. (Appellants’ App. at 329-38.)

. On the critical issue of whether PNM could be required to bury its transmission line, the County's own complaint acknowledged that the County had discretion, even under the amended ordinance, to deviate from the requirement The record also supports the view that the amended ordinance that the County sought to enforce, No. 1998-15, was passed as an emergency ordinance to apply to the Norton-Tesuque Project because the existing Code was unclear on whether PNM was required to obtain a permit and the permit requirement had been applied inconsistently in the past. (Appellants' App. at 87-94.) It also supports the view that construction on the project had begun before the ordinance was adopted, even though a large part of those activities may have taken place outside of county limits.