**SAVE OUR CUMBERLAND MOUN-TAINS, INC., et al., Plaintiffs,**

v.

**James G. WATT, et al., Defendants.**

Civ. A. No. 81–2134.

United States District Court, District of Columbia.

Sept. 30, 1982.

Brent N. Rushforth, Dow, Lohnes & Albertson, L. Thomas Galloway, Harmon & Weiss, Washington, D.C., for plaintiffs.

Alfred T. Ghiorzi, Atty., Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

BARRINGTON D. PARKER, District Judge.

In this action, two Appalachian-based nonprofit environmentalist organizations, Save Our Cumberland Mountains, Inc. and the Council of Southern Mountains, Inc., seek declaratory and injunctive relief against the Secretary of the Interior (Secretary) and the Director of the Office of Surface Mining Reclamation and Enforcement (OSM). The plaintiffs claim that Department of Interior officials have failed to assess and collect mandatory civil penalties and take appropriate enforcement actions against surface coal mine operators who have been found in violation of the Surface Mining Control and Reclamation Act of 1977 (Act), 30 U.S.C. §§ 1201 et seq.

Defendants have moved to dismiss on grounds that venue is improper in this judicial district. They assert that this action cannot be brought in this district because the mining operations violative of the Act for which penalties have not been collected are not located in the District of Columbia. Defendants also assert that the complaint fails to state a claim for which relief may be granted because imposition of the penalties sought by the plaintiffs is an action within the government's discretion. The parties have briefed and orally argued the motion to dismiss with respect to the venue provision and have also briefed the issue whether the assessment of penalties is mandatory or discretionary.

For the reasons set forth below the Court concludes that the plaintiffs have established venue and jurisdiction in this Court and that defendants have a mandatory duty to impose the penalties prescribed by the Act.

## I.

The Surface Mining Control and Reclamation Act is a comprehensive statute de-signed to "establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations." 30 U.S.C. § 1202. Section 520 of the Act, 30 U.S.C. § 1270, provides for two types of private actions: subsection (a)(1) authorizes citizen suits against anyone "alleged to be in violation of the provisions of this chapter or of any rule, regulation, order or permit issued pursuant thereto..."; subsection (a)(2) authorizes suits against a regulatory authority, including the Secretary for failure "to perform any act or duty under this chapter which is not discretionary ...."

In addition, section 520(c)(1) provides that the appropriate venue for actions "respecting a violation of this chapter or the regulations thereunder may be brought only in the judicial district in which the surface coal mining operation complained of is located." Defendants argue that venue is improper in this district since the violative surface mining operations are located not within the District of Columbia but, rather, within the Appalachian region.

■ Although defendants suggest otherwise, section 520(c) is a venue, not a jurisdictional, provision. As such, it relates solely to the convenience of the litigants. *Denver & Rio Grande Western Railroad Co. v. Brotherhood of Railroad Trainmen*, 387 U.S. 556, 560, 87 S.Ct. 1746, 1748–1749, 18 L.Ed.2d 954 (1967); *Olberding v. Illinois Central Railroad Co.*, 346 U.S. 338, 340, 74 S.Ct. 83, 85, 98 L.Ed. 39 (1953). Moreover, it is generally appropriate to interpret a venue statute so as to allow the plaintiffs to choose their forum. *See Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

■ With these guidelines in mind, the government's argument must fail. The plaintiffs challenge the Secretary's decision not to assess penalties under section 518(h) of the Act. The Secretary's decision is allegedly nationwide in scope, affecting 700 or more violations. Clearly, it would not be more convenient to any party if plaintiffs were required to refile this suit in Virginia,

Kentucky or elsewhere, when the challenged action took place here in Washington, D.C. and affects surface coal mines throughout the United States.

Rejection of the impractical result sought by the government need not rest on a contorted reading of section 520(c). That venue provision refers to actions involving only individual coal mines. It provides that: "Any action respecting a violation of this Act or the regulations thereunder may be brought only in the judicial district *in which the surface coal mining operation complained of is located*" (emphasis added). In this case, plaintiffs challenge a purported national policy under the Act, not 700 individual decisions involving particular coal mining operations.[1]

Professor Moore has cautioned that "venue limitations should not be made a fetish." 1 J. Moore, Moore's *Federal Practice* ¶ 0.140[1.–1] (2s ed. 1976). The defendants' interpretation of the venue provision makes no sense in this case and is not required under a straightforward reading of section 520(c). Thus, this Court must turn to the general venue statute, 28 U.S.C. § 1391(b), which provides venue within this district as the place where the claim arose.

## II.

The substantive issue in this case is whether section 518 of the Act imposes a mandatory or discretionary duty on the Secretary to assess penalties for a cessation order issued under section 521(a)(3). If section 518 imposes a discretionary duty, then

dismissal of this action is appropriate since section 520(a)(2), the jurisdictional provision relied upon by the plaintiffs, confers jurisdiction solely over suits to compel the Secretary to perform a mandatory duty. If, on the other hand, section 518 imposes a mandatory duty, then the jurisdictional requirement is satisfied.

The enforcement provisions of the Act are found in section 521, 30 U.S.C. § 1271. When the Secretary has reason to believe that a mining operation contains a serious violation of the Act or the operator's permit —i.e., one which creates "imminent danger to the health or safety of the public" or "can reasonably be expected to cause significant, imminent environmental harm"—the Secretary must immediately order cessation of mining activities. Section 521(a)(2), 30 U.S.C. § 1271(a)(2). If, however, the violation does not create an imminent danger to the public or to the environment, then the Secretary must issue a notice of violation fixing a reasonable time for the abatement of the condition. Section 521(a)(3), 30 U.S.C. § 1271(a)(3). If the mine operator fails to abate the condition within the specified time, the Secretary "shall immediately order a cessation of surface coal mining and reclamation operations on the portions thereof relevant to the violation." *Id.*

This lawsuit is concerned with the civil penalties which follow the issuance of a "failure-to-abate" cessation order. The plaintiffs rely on the mandatory language contained within the relevant portions of the penalties section of the statute. Section 518(a) states:

1. This case is distinguishable from a recent ruling of Judge Richey of this Court finding that venue was improper in this district under section 520(c) of the Act. *Save Our Cumberland Mountains v. Watt,* No. 81–2238 (D.D.C. July 6, 1982). There, plaintiffs claimed that the Secretary of the Interior failed to inspect and enforce against mining and reclamation operations alleged to be in excess of two acres and failed to collect monies owed by mining operators to the Abandoned Mine Reclamation Fund. The Court held that individual lawsuits should be brought in the district of each mining operation because "the particular facts of each mining or reclamation operation might dictate a different result in each instance." The Court was apparently, and reasonably, concerned

that a determination of whether a site exceeds two acres and a determination of the reclamation fees appropriate for each operator are dependent upon information about each particular site.

In this case, however, the facts of each violative operation are not relevant. The issue here is whether the Secretary's duty to impose civil penalties is discretionary or mandatory. This Court is concerned with the nature of the Secretary's duty, not with the conditions at each of the operations collectively referred to in the complaint. Site-specific facts are relevant not to this lawsuit but, rather, to the administrative process invoked after issuance of the assessment.

[A]ny permittee who violates any permit condition or who violates any other provision of this title, may be assessed a civil penalty by the Secretary, except that if such violation leads to the issuance of a cessation order under section 521, the civil penalty *shall* be assessed.

30 U.S.C. § 1268(a) (emphasis added).

In addition, section 518(h) reiterates and specifies the mandatory penalty for failure-to-abate cessation orders:

Any operator who fails to correct a violation for which a citation has been issued under section 1271(a) of this title within the period permitted for its correction . . . *shall* be assessed a civil penalty of not less than $750 for each day during which such failure or violation continues.

30 U.S.C. § 1268(h) (emphasis added).[2]

The word "shall" in these two provisions suggests that the duty to which it applies is mandatory. *See, e.g., Association of American Railroads v. Costle*, 562 F.2d 1310, 1312 (D.C.Cir.1977). Nevertheless, the government argues that the assessment of penalties for failure-to-abate cessation orders is discretionary. The Secretary asserts that the statutory scheme "viewed as a whole" supports this conclusion. He points to the elaborate administrative review process available to a mine operator who seeks to challenge the order or the assessment. *See* 30 U.S.C. §§ 1268(b), (c), 1271(a)(5), 1275; 43 C.F.R. Part 4.[3] A mine operator might utilize these procedures to challenge the validity of a notice of violation or cessation order or the amount of the penalty. If so, the Secretary might decide not to proceed with a notice of violation during a minesite

hearing or before an administrative law judge. The Secretary might also decide not to appeal from an adverse administrative law judge's ruling. Such examples of prosecutorial discretion, the Secretary argues, suggest that the Secretary must also have discretion in the assessment of penalties.

The Secretary's position lacks merit. Nothing in the administrative review procedures provide that the Secretary need not assess a penalty upon an operator who receives a failure-to-abate cessation order. Although the order or assessment might not withstand the rigors of administrative review, the Secretary cannot rely on the possibility of an adverse outcome as an excuse for failing to take the first step in the penalty process required by the statute.

The Secretary also offers a number of reasons why the relief sought by the plaintiff, even if supported by the statute and regulations, should nonetheless be denied on grounds of practicality: For instance, the notices of violation were mostly issued in 1979 and 1980 and might now be impossible to enforce. Similarly, section 518(c), 30 U.S.C. § 1268(c), requires that the Secretary inform the operator of the proposed assessment within 30 days of issuance of the notice of violation or cessation order; the Secretary's failure to comply with the 30-day requirement may bar collection of the penalties.[4] Finally, he notes that enforcement efforts might not be "cost-effective."

The Court is unconvinced that the cost of enforcement or likelihood of success is a concern which warrants endorsement of the

---

**2.** The regulations contain similar mandatory language:

[W]henever a violation contained in a notice of violation or a cessation order has not been abated within the abatement period set in the notice or order or as subsequently extended pursuant to Section 521(a) of the Act, a civil penalty of not less than $750 shall be assessed for each day during which such failure to abate continues . . . .

30 C.F.R. § 723.15(b).

**3.** The Secretary's explanation of these statutory and regulatory provisions is nearly identical to that provided the Court and quoted at length

in *United States v. Hill*, 533 F.Supp. 810 (E.D. Tenn.1982). It does not, therefore, warrant repetition.

**4.** The Secretary notes, however, that he has adopted the position in other litigation that failure to comply with the 30-day requirement does not bar imposition of a penalty absent the operator's showing of actual prejudice. *Sahara Coal Co.*, Interior Board of Surface Mining and Reclamation Appeals No. 81–31 (Nov. 30, 1981); *Badger Coal Co.*, Interior Board of Surface Mining and Reclamation Appeals No. 80–16 (July 24, 1980).

Secretary's failure to comply with the explicit requirements of the statute. The plaintiffs seek only the performance of mandatory duties in the manner specified by the statute. The Secretary cannot convert a mandatory duty into a discretionary one simply by deferring it for a lengthy period of time.

### III.

■ The plaintiffs also seek enforcement of a regulation, 30 C.F.R. § 723.15(b)(2), which requires the Secretary to take enforcement measures following assessment of a penalty. It provides:

> Such penalty for the failure to abate a violation shall not be assessed for more than 30 days for such violation. If the permittee has not abated the violation within the 30-day period, the Office shall take appropriate action pursuant to sections 518(e), 518(f), 521(a)(4) or 521(c) of the Act within 30 days to ensure that abatement occurs or to ensure that there will not be a reoccurrence of the failure to abate.

The defendants have not focused on this regulation in their memoranda in support of the motion to dismiss. Because of the foregoing ruling that the duty under section 518 is mandatory, however, it follows that the enforcement measures under this regulation are also mandatory.

### IV.

Although the sole dispositive motion before the Court in this case is defendants' motion to dismiss, the Court is of the view that the foregoing has fully addressed the substantive issues in this case. The only remaining question is the manner for proceeding with the assessment of penalties and enforcement of 30 C.F.R. § 723.-15(b)(2).

The Court will enter judgment for the plaintiffs and require the plaintiffs to submit an appropriate order consistent with this Memorandum Opinion.