**SAVE OUR CUMBERLAND MOUNTAINS, INC., et al., Plaintiffs–Appellees,**

v.

**Manuel LUJAN, Secretary of the Interior, et al., Defendants– Appellees,**

**and**

**National Coal Association and American Mining Congress, Intervenors– Appellants.**

**No. 90–5374.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 16, 1992.

Decided May 22, 1992.

Rehearing Denied Aug. 18, 1992.

Thomas C. Means, with whom John A. MacLeod and J. Michael Klise for Nat. Coal Ass'n, and Edward M. Green and Stuart A. Sanderson, Washington, D.C., for American Min. Congress were on the joint brief, for appellants.

John T. Stahr, Attorney, Dept. of Justice, with whom Barry M. Hartman, Acting Asst. Atty. Gen., Robert L. Klarquist, and Alfred T. Ghiorzi, Attorneys, Dept. of Justice, Washington, D.C., were on the brief, for Federal appellees.

L. Thomas Galloway, with whom Judith A. Mather and Robin H. Sangston, Washington, D.C., were on the brief, for appellees, Save Our Cumberland Mountains, Inc., et al.

Before RUTH BADER GINSBURG, BUCKLEY and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

This case concerns the proper forum for "citizen suits" under the Surface Mining Control and Reclamation Act of 1977 (SMCRA or the Act), 30 U.S.C. §§ 1201 *et seq.* Section 520 of the Act authorizes "any person having an interest which is or may be adversely affected" to commence a civil action to compel compliance with the Act or "any rule, regulation, order or permit" thereunder. 30 U.S.C. § 1270(a).

This "citizen suit" prescription describes two categories of civil actions: (1) complaints against the United States or other governmental instrumentality for violation of the Act or any rule, regulation, order or permit issued pursuant thereto, or against any other person for violating a SMCRA-implementing rule, regulation, order or permit, SMCRA § 520(a)(1), 30 U.S.C. § 1270(a)(1); [1] (2) complaints against the Secretary or "the appropriate State regulatory authority" for "failure ... to perform any act or duty under [SMCRA] which is not discretionary with the [regulator]." SMCRA § 520(a)(2), 30 U.S.C. § 1270(a)(2). On the forum for "citizen suits," SMCRA § 520(c)(1) provides:

> Any action respecting a violation of this chapter or the regulations thereunder may be brought only in the judicial district in which the surface coal mining operation complained of is located.

30 U.S.C. § 1270(c)(1).

The second category of citizen civil action is at issue here. Plaintiff Save Our Cumberland Mountains, Inc. (SOCM) [2] commenced this suit pursuant to SMCRA § 520(a)(2) against the Secretary of the Interior and the Director of the Office of Surface Mining Reclamation and Enforcement (OSM) to check the government's alleged failure, nationwide, effectively to enforce the Act. SOCM sought an order, nationwide in scope, compelling the Secretary and OSM (collectively, the Secretary) to assess and collect civil penalties against cited violators and to take alternative enforcement action against operators who fail, despite notice and penalties, to abate their violations.

SOCM chose the U.S. District Court for the District of Columbia as the forum for its citizen suit. Concededly, no "surface coal mining operation ... is located" in this judicial district. See SMCRA § 520(c)(1), 30 U.S.C. § 1270(c)(1). SOCM maintains, however, that the special forum rule contained in SMCRA's citizen suit provision governs only suits directed primarily against mine operators, i.e., violators of the regulatory prescriptions, civil actions of the kind delineated in SMCRA § 520(a)(1). Suits against the official enforcers for failure to enforce, i.e., complaints of inaction by the Secretary or "the appropriate State regulatory authority," suits of the kind delineated in SMCRA § 520(a)(2), SOCM argues, are not subject to the forum rule of SMCRA § 520(c)(1). Instead, according to SOCM, suits against the regulators to compel enforcement may be brought in the district where those regulators reside, in this case, in the nation's capital. See 28 U.S.C. § 1391(b), (e). Alternately, SOCM argues that the forum rule stated in SMCRA § 520(c)(1) is waivable, and that the Secretary in fact waived the limitation.

Recognizing that the statutory construction question is close, we hold that the special forum rule contained in SMCRA § 520(c)(1), 30 U.S.C. § 1270(c)(1), controls all citizen suits described in SMCRA § 520(a), 30 U.S.C. § 1270(a), and is not confined to suits directed primarily against mine operators. We further hold that the rule is not waivable. Our conclusions are consistent with precedent binding in this circuit, *New Mexico ex rel. Energy and Minerals Dep't v. U.S. Dep't of Interior*, 820 F.2d 441 (D.C.Cir.1987), and with this fundamental consideration: courts custom-

---

**1.** Congress did not want mine operators who complied with all regulations, orders, and permits to be subject to suit where the Secretary, in permitting the operation, failed properly to implement the Act. Congress therefore limited actions against private operators to instances of violation of a "rule, regulation, order or permit." A government agency or instrumentality, however, is both regulator and, as mine operator, regulatee, and hence may be sued under SMCRA § 520(a)(1), 30 U.S.C. § 1270(a)(1), "when it is the operator of a coal mine and is not in compliance with the Act." *Oklahoma Wildlife Fed'n v. Hodel*, 642 F.Supp. 569, 571–72 (N.D.Okla.1986) (summarizing legislative histo-

ry accounting for Congress' subjecting government operators, but not private operators, to suit for operations out of compliance with the Act).

**2.** As described in SOCM's certificate as to parties, SOCM "is a non-profit organization whose membership is comprised of residents of the Appalachian area who are vitally concerned about and affected by the proper regulation of surface mining." Council of the Southern Mountains, Inc., originally a co-plaintiff, is no longer in existence.

arily adjudicate episode- or area-specific controversies; federal judges, applying federal legislation, generally adhere to that mode of adjudication absent clear instruction from Congress—as in the case of review of rulemakings setting nationwide standards—that more encompassing action has been committed to the judges' charge.

## I. Background

### A. *SMCRA's Regulatory Regime*

■■■ SMCRA "establish[es] a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations." 30 U.S.C. § 1202(a). OSM, an office within the Department of the Interior, administers and enforces the Act. 30 U.S.C. § 1211(c). A state, by developing a SMCRA-implementation plan approved by the Secretary, may assume jurisdiction over non-federal surface coal mining operations within its borders. 30 U.S.C. § 1253. Indeed, Congress anticipated that primary responsibility for the regulation of surface mining would "rest with the States." 30 U.S.C. § 1201(f). A federally-designed program governs in states that have not put in place an acceptable implementation plan of their own. 30 U.S.C. §§ 1254(a), (b), 1271(b).[3]

■■■ SMCRA prohibits the operation of a surface mine without a permit. 30 U.S.C. § 1256. The Act instructs OSM to notify the state regulatory authority, in states that have one, when OSM has reason to believe that an operator is in violation of SMCRA or a permit. If no state authority exists, or the state fails to act, OSM must proceed with an inspection. When a violation is confirmed, OSM "shall issue" a notice prescribing a reasonable time (not exceeding 90 days) for abatement of the violation. To check violations that persist despite the notice to abate, the statute directs OSM to order an immediate cessation of operations. 30 U.S.C. § 1271(a)(1), (3).

■■■ Once a cessation order issues, OSM must assess a civil penalty against the mine of at least $750 per day. 30 U.S.C. § 1268(h). OSM regulations limit such penalties to a period of 30 days. 30 C.F.R. § 723.15(b)(2). If the violation has not been abated by then, OSM "shall take appropriate [alternative enforcement] action"; appropriate measures include criminal prosecution, proceedings to hold corporate officers or agents personally liable for civil penalties, proceedings to suspend or revoke an operator's permit, and proceedings to obtain injunctive relief. *See* 30 U.S.C. §§ 1268(e) & (f), 1271(a)(4) & (c).

■■■ A permit applicant must submit with the application a list of all SMCRA violation notices, indicating the final resolution of each notice. 30 U.S.C. § 1260(c). If any surface mine "owned or controlled by the applicant" has an unabated violation, the Act instructs OSM not to issue a permit until the applicant proves that the violation has been or is being corrected. *Id.*

### B. *The History of this Litigation*

SOCM commenced this action in 1981 charging the Secretary with large-scale failure, throughout the nation, to enforce SMCRA. SOCM alleged that in over 700 instances, the Secretary had not followed up notices of violation with the imposition of mandatory penalties. The complaint further asserted that the Secretary had allowed hundreds of violators to continue operations, with violations unchecked, after expiration of the 30–day penalty period. Seeking court-ordered compliance by the Secretary with the Act's enforcement commands, SOCM alleged jurisdiction under SMCRA § 520(a)(2), 30 U.S.C. § 1270(a)(2) (authorizing citizen suit against Secretary for failure to perform nondiscretionary duties), as well as 28 U.S.C. §§ 1331, 1337, 1361, 2201 and 2202 (federal question, commerce regulation, mandamus, declaratory judgment provisions).

The Secretary moved to dismiss on the ground, *inter alia*, that SMCRA § 520(c)(1), 30 U.S.C. § 1270(c)(1), allowed suit "only in the judicial district in which the surface coal mining operation com-

---

**3.** The Code of Federal Regulations indicates that 24 states have state regulatory programs and 11 states have federally-implemented programs. *See* 30 C.F.R. Ch. VII, subchapter T.

plained of is located." The Secretary maintained that section 520(c)(1) constituted a jurisdictional limitation. The district court denied the motion, concluding that section 520(c)(1) was not jurisdictional in character but was merely a venue provision, one designed to serve the convenience of litigants; emphasizing that SOCM "challenge[d] a purported national policy," the district court held applicable "the general venue statute, 28 U.S.C. § 1391(b), which provides venue within [the District of Columbia] as the place where the claim [against the Secretary] arose." *Save Our Cumberland Mountains, Inc. v. Watt*, 550 F.Supp. 979, 980–81 (D.D.C.1982).

Taking up the merits of SOCM's complaint, the district court determined that SMCRA renders mandatory the Secretary's duty to collect civil penalties and initiate alternative enforcement action. That duty, the court concluded, had not been fulfilled. Finding no issues of material fact genuinely in dispute, the court pronounced summary judgment for SOCM. *Id.* at 983. Following the entry of an order granting injunctive relief, the Secretary appealed.

Around the same time, in another case in which SOCM was a plaintiff, a different judge of the district court reached an apparently conflicting conclusion on the application and exclusivity of section 520(c) in citizen suits under section 520(a)(2); the complaint in that case challenged the Secretary's implementation of a provision of the Act, SMCRA § 528(2), 30 U.S.C. § 1278(2), exempting "the extraction of coal for commercial purposes where the surface mining operation affects two acres or less." *Save Our Cumberland Mountains, Inc. v. Watt*, 558 F.Supp. 22 (D.D.C.1982) (*Two-acres* case). *Two-acres* involved three claims. Two were of the "citizen suit" genre; brought under section 520(a)(2), they challenged the Secretary's failure to inspect and institute enforcement proceedings against hundreds of mining operations alleged to have improperly claimed the two-acres exemption. The third claim in *Two-acres* questioned a "rulemaking" disposi-

tion; it challenged under SMCRA § 526(a)(1), 30 U.S.C. § 1276(a)(1), the Secretary's withdrawal of a regulation interpreting the exemption. The district court, based on section 520(c)(1), dismissed the first two claims as improperly brought in the District of Columbia; it dismissed the third, although properly brought in the District, as moot.

*The plaintiffs' appeal* from the judgment dismissing the complaint in the *Two-acres* case was consolidated for oral argument with *the Secretary's appeal* in this case. The panel, on the same day, in two separate but closely coordinated opinions, affirmed the judgment dismissing the complaint in the *Two-acres* case, and reversed the judgment against the Secretary in this case. *Save Our Cumberland Mountains, Inc. v. Clark*, 725 F.2d 1422 (*Two-acres* case), 725 F.2d 1434 (instant case) (D.C.Cir. 1984). The appellate panel concluded that section 520(c)(1) governed all citizen suits under section 520(a) and therefore precluded suit in the District of Columbia, a district in which "[none of] the surface coal mining operation[s] complained of is located."

The court, en banc, voted to rehear the two appeals. Pending en banc review, the full court, in April 2, 1984 orders, vacated the panel judgments and opinions in both cases. A comprehensive settlement of this case, however, intercepted the scheduled en banc consideration. In line with the parties' request, on November 6, 1984, the full court remanded both cases to the district court for proceedings consistent with the settlement negotiations.

On January 31, 1985, the district court entered a consent order in the instant case setting out the terms of the parties' agreement. *Save Our Cumberland Mountains, Inc. v. Clark*, 22 Env't Rep.Cas. (BNA) 1217 (D.D.C.1985).[4] The order provided, *inter alia*, that OSM would implement the permit blocking prescription of 30 U.S.C. § 1260(c) by establishing a computerized system capable of effectively checking permit applicants for prior violations. The

---

**4.** The *Two-acres* case was settled separately. See *Save Our Cumberland Mountains, Inc. v.*

*Hodel,* 622 F.Supp. 1160, 1163 (D.D.C.1985).

system, now known as the Applicant/Violator System (AVS), would match applicants and permit holders against entities and persons answerable for unabated violations and unpaid civil penalties. OSM would call upon state regulatory authorities to deny or withdraw permits, or do so itself, pending effectuation of an abatement plan or payment schedule that met the regulator's approval. The consent order was to terminate on January 31, 1990 unless, in the interim, the court found the Secretary in "substantial, systematic non-compliance."

In April 1989, SOCM moved for an order finding the Secretary in substantial non-compliance. The parties once again pursued settlement and, in January 1990, asked the district court to approve their second agreement, terminate the consent order enforcing the first agreement, and dismiss the action with prejudice. The 1990 agreement contains various provisions designed to enhance the AVS system and to improve OSM's performance in detecting and remedying SMCRA violations.[5]

In December 1989, just as the parties neared the final text of their second agreement, mining industry trade associations National Coal Association and American Mining Congress (collectively, NCA) moved to intervene to oppose court approval of the settlement.[6] NCA urged that the district court, by reason of section 520(c)(1), had no authority to entertain the case, and that the proposed settlement was unlawful in numerous respects. The district court limited NCA's intervention "to advis[ing] the court of any aspect of the settlement agreement ... which is not in accordance with SMCRA and the regulations thereunder." Ultimately, the district court approved the settlement as "lawful and reasonable." Memorandum, C.A. No. 81–2134, at 3, 1990 WL 261779 (D.D.C. Sept. 5, 1990).

NCA appeals the district court's approval of the second settlement agreement, first arguing that the district court lacked jurisdiction in light of section 520(c)(1). NCA also maintains that SOCM, an Appalachian-based organization, lacks standing to bring this suit alleging nationwide failure to enforce SMCRA. *See Conservation Law Foundation of New England v. Reilly*, 950 F.2d 38 (1st Cir.1991) (regional environmental organization lacks standing to seek nationwide injunctive relief in citizen suit under Comprehensive Environmental Response, Compensation, and Liability Act). On diverse statutory and constitutional grounds, NCA attacks the second settlement agreement as unlawful. The Secretary, reviving argument made when the litigation was new, joins NCA in urging that section 520(c)(1) is a jurisdictional impediment to the district court's order confirming the settlement. On the merits, the Secretary defends the agreement as lawful, fair, and reasonable. We hold that section 520(c)(1) precludes locating a citizen suit in a district where no mining operations occur, and therefore do not reach the question of SOCM's standing or NCA's objections to the substance of the settlement agreement.

II. Analysis

A. *The Language and Structure of SMCRA's Citizen Suit Provision*

As earlier described, *see supra* pp. 1542–43, SMCRA § 520 authorizes suits by

**5.** Congress has to date appropriated more than $20 million for the Secretary and the states to comply with the agreements. The latest of these is Department of the Interior and Related Agencies Appropriations Act, 1991, H.R.Conf.Rep. No. 971, on H.Res. 5769, 101st Cong., 2d Sess. (1990) (funding for states to implement the second settlement agreement).

**6.** Although NCA knew, contemporaneously, of the first settlement agreement and of the negotiations for the second, it delayed entering the fray because, as represented by appellate counsel, its interests were not affected by the litigation until late 1988 and early 1989, when newly promulgated rules "threatened law-abiding companies with sanctions based on violations by others." Brief of Appellants National Coal Association and American Mining Congress at 5 n. 1. NCA is currently no sidelines sitter. It has filed actions under section 526(a)(1), 30 U.S.C. § 1276(a)(1), contesting the rules to which it objects. The "rules cases" have been consolidated under the caption *National Wildlife Fed'n v. Lujan*, No. 88–3117 (D.D.C.), and are awaiting district court decision. In addition to the "rules cases," NCA has brought an independent action, still pending in the district court, challenging the second SOCM–Secretary settlement agreement.

citizens against both mine operators, SMCRA § 520(a)(1), 30 U.S.C. § 1270(a)(1), and official enforcers, SMCRA § 520(a)(2), 30 U.S.C. § 1270(a)(2).[7] In this regard, section 520 markedly resembles counterpart citizen suit provisions of the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. § 1365,[8] and the Clean Air Act, 42 U.S.C. § 7604.[9] All three Acts present first, in an "(a)(1)" section, authorization for suits to check unlawful operations or activities, and second, in an "(a)(2)" section, permission for suits to prompt effective law enforcement.

Each Act also contains a forum prescription, a "(c)(1)" section, but at this juncture, the provisions diverge. FWPCA and the Clean Air Act contain "(c)(1)" forum prescriptions specifically linked to unlawful operations or activities, i.e., to "(a)(1)" suits. SMCRA's citizen suit forum rule, in contrast, is not similarly qualified. Thus, FWPCA § 505(c)(1) addresses actions "respecting a violation by a discharge source of an effluent standard or limitation." [10] Clean Air Act § 304(c)(1), correspondingly, addresses actions "respecting a violation by a stationary source of an emission standard or limitation." [11] SMCRA § 520(c)(1) employs broader language; it encompasses, simply, "[a]ny action respecting a violation of this chapter." [12] In all three Acts,

7. Section 520(a), 30 U.S.C. § 1270(a), provides:
(a) ... any person having an interest which is or may be adversely affected may commence a civil action on his own behalf to compel compliance with this chapter—
(1) against the United States or any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution which is alleged to be in violation of the provisions of this chapter or of any rule, regulation, order or permit issued pursuant thereto, or against any other person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to this subchapter; or
(2) against the Secretary or the appropriate State regulatory authority to the extent permitted by the eleventh amendment to the Constitution where there is alleged a failure of the Secretary or the appropriate state regulatory authority to perform any act or duty under this chapter which is not discretionary with the Secretary or with the appropriate State regulatory authority.
The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties.

8. Section 505(a) of the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1365(a), provides in relevant part:
(a) ... any citizen may commence a civil action on his own behalf—
(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or
(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

9. Section 304(a) of the Clean Air Act Amendments of 1977, 42 U.S.C. § 7604(a), provides in relevant part:
(a) ... any person may commence a civil action on his own behalf—
(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation,
(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator. ....

10. FWPCA § 505(c)(1), 33 U.S.C. § 1365(c)(1), provides:
(c)(1) Any action respecting a violation by a discharge source of an effluent standard or limitation or an order respecting such standard or limitation may be brought under this section only in the judicial district in which such source is located.

11. Clean Air Act § 304(c)(1), 42 U.S.C. § 7604(c)(1), provides:
(c)(1) Any action respecting a violation by a stationary source of an emission standard or limitation or an order respecting such standard or limitation may be brought only in the judicial district in which such source is located.

12. SMCRA § 520(c)(1), 30 U.S.C. § 1270(c)(1), provides:
(c)(1) Any action respecting a violation of this chapter or the regulations thereunder may be brought only in the judicial district in which the surface coal mining operation complained of is located.

converging again, the "(c)(2)" prescriptions deal not with the forum for a citizen suit, but with the regulator's right to intervene in such an action.[13]

In urging that the instant proceedings are properly lodged in the District of Columbia, SOCM asks us to follow the lead of courts that have grappled with forum-rule issues in FWPCA and Clean Air Act citizen suits. Fastening on the close connection of the "(c)(1)" provisions of those Acts to "(a)(1)" suits against polluters, courts have allowed citizens to maintain "(a)(2)" suits against regulators (state or federal) in other places, *i.e.*, those designated by the general venue provisions of 28 U.S.C. § 1391. *See Citizens for a Better Environment v. Costle*, 515 F.Supp. 264, 277 (N.D.Ill.1981) (Clean Air Act citizen suit against Environmental Protection Agency under 42 U.S.C. § 7604(a)(2) for failure to perform alleged mandatory duty; proper forum is determined by 28 U.S.C. § 1391(e), not by 42 U.S.C. § 7604(c)(1)); *Township of Long Beach v. City of New York*, 445 F.Supp. 1203, 1207–08 (D.N.J.1978) ("(c)(1)" forum provision of FWPCA is applicable to "(a)(1)" actions against polluters, but does not stop recourse to Title 28 general venue provisions for "(a)(2)" suit against Administrator for failure to perform alleged nondiscretionary duty). The generality of SMCRA § 520(c)(1)'s language, in contrast to the particularity of the "(c)(1)" provisions of FWPCA and the Clean Air Act, however, causes us to resist that course.

■ We set out again in text the words of SMCRA § 520(c)(1) because they are the prime basis for our decision:

Any action respecting a violation of this chapter or the regulations thereun-

der may be brought only in the judicial district in which the surface coal mining operation complained of is located.

30 U.S.C. § 1270(c)(1). The words "this chapter" refer to the entire Act.[14] NCA, now joined by the Secretary, highlights the words "Any action," "this chapter," meaning Act, and "only." SOCM, on the other hand, stresses the words "violation" and "the surface coal mining operation complained of." Those words, SOCM maintains, reveal an intention to describe infractions by mining operators, actions of the "(a)(1)" variety, not complaints under "(a)(2)" that the Secretary has failed to perform required duties.

A panel of this court in the *Two-acres* case, 725 F.2d at 1427–29, *see supra* p. 1545, considered and rejected SOCM's arguments extracted from the language Congress used. We agree with and recapitulate the panel's reasoning in *Two-acres*. The *Two-acres* opinion, we bear in mind, was vacated in anticipation of this court's en banc rehearing. We look to that opinion, accordingly, for the soundness of its reasoning and not as binding precedent. *See Christianson v. Colt Industries Operating Corp.*, 870 F.2d 1292, 1298 (7th Cir.) (although vacated, prior decision "stands as the most comprehensive source of guidance available on the ... questions at issue in this case"), *cert. denied*, 493 U.S. 822, 110 S.Ct. 81, 107 L.Ed.2d 47 (1989).

Preliminarily, we note, as did the *Two-acres* panel, 725 F.2d at 1427 n. 14, that the language used by Congress is neither clarified nor clouded by the legislative history of the Act. Indeed, the legislative materials contain no discussion at all of SMCRA § 520(c)(1)'s forum rule.[15]

---

**13.** SMCRA § 520(c)(2), 30 U.S.C. § 1270(c)(2), provides: "In [an] action under this section, the Secretary, or the State regulatory authority, if not a party, may intervene as a matter of right." FWPCA § 505(c)(2), 33 U.S.C. § 1365(c)(2), provides: "In [an] action under this section, the Administrator, if not a party, may intervene as a matter of right." Clean Air Act § 304(c)(2), 42 U.S.C. § 7604(c)(2), provides, in relevant part: "In any action under this section, the Administrator, if not a party, may intervene as a matter of right at any time in the proceeding."

**14.** As it appears in the Statutes at Large, the section reads: "Any action respecting a violation of this Act...." Surface Mining Control and Reclamation Act of 1977, Pub.L. No. 95–87, 91 Stat. 447, 504 (1977).

**15.** In a supplemental submission to this court, Letter dated March 16, 1992, submitted pursuant to FED.R.APP.P. 28(j), SOCM pointed out that, while the Act was moving through the Senate, the bill's § 520(c)(1) prescription first used the words "[a]ny action respecting a violation of

Turning to the word "violation," it is true, and hardly surprising, that the word appears several times in the Act in reference to mine operations or mine operators. *See, e.g.,* 30 U.S.C. §§ 1260(c), 1267(e), 1267(h)(1). But it is commonly understood that

> a statute is violated when one transgresses its terms. When the Secretary fails to perform a duty required by the Act, he has transgressed the Act's affirmative mandate; that is, he has "violated" the Act. The Secretary's functions and responsibilities [under SMCRA] derive solely from the Act. The Secretary's alleged failure to perform these duties can thus only be interpreted as a *violation* of the Act.

*Two–Acres,* 725 F.2d at 1427.

Tellingly, SOCM's complaint in this very action uses the word "violation" in relation to the Secretary's conduct as regulator. Thus, paragraph 10 refers to "defendant's violation of law, within the meaning of Section 520(b)(2) of the Act, 30 U.S.C. § 1270(b)(2)." Paragraph 19 asserts that "[d]efendants have failed ... to collect penalties ... in violation of ... § 518(h) of the Act and 30 C.F.R. § 723.15." Paragraph 21 charges that "[d]efendants have repeatedly violated and continue to violate 30 C.F.R. § 723.15."

As for SMCRA § 520(c)(1)'s reference to the district "in which the surface mining operation complained of is located," we again borrow from *Two-acres.* A charge that the Secretary is failing to enforce the Act must be earthbound. To have substance, it must rest on proof that mine operators, at specific locations, are evading the terms of the Act, and are thus "adversely affect[ing]" the interests of the complaining persons. *See* 725 F.2d at 1428 ("[E]ven in the context of the Secretary's failure to perform mandatory duties, the claim at bottom is referenced to specific mining operations."); *id.* at 1437 (instant case) ("[E]ven though SOCM 'complains of' noncompliance by the Secretary, the claim is ultimately concerned with violations and abatement activities at specific mines."). In sum, we find most sensible a literal reading of SMCRA § 520 that locates "[a]ny" citizen suit in a place where offending operations are ongoing. SOCM's opposing interpretation derives no support from SMCRA's legislative history, and is not as readily fitted to the structure and language of the provision.

We have taken into account SOCM's suggestion that Congress, by repeatedly allocating funds for the Secretary's compliance with the court-entered settlement agreements, *see supra* note 5, has effectively matched SMCRA § 520(c)(1) with "(a)(1)" actions and authorized recourse to 28 U.S.C. § 1391 for "(a)(2)" suits. We do not read so much into the appropriations measures, for there is no indication that they stand for anything more than Congress' readiness to enable the Secretary to comply with court orders and perhaps the legislature's approval of the AVS project. *Cf. Randall v. Loftsgaarden,* 478 U.S. 647, 661, 106 S.Ct. 3143, 3151–52, 92 L.Ed.2d 525 (1986) (repeal of legislative prescription, in whole or in part, "by implication" is not favored).

Nor do we think that our reading of SMCRA § 520(c)(1) leaves no office for "(a)(2)" suits. Congress meant to distinguish "(a)(1)" actions against operators of mines, including both private and governmental entities, from "(a)(2)" suits against

this Act," S. 7, 95th Cong., 1st Sess. 103 (Jan. 10, 1977) (Senate bill as introduced), then switched to "[a]ny action pursuant to this section," S.Rep. No. 128, 95th Cong., 1st Sess. 35 (May 10, 1977); S. 7, 95th Cong., 1st Sess. (May 20, 1977), *reprinted in* 123 Cong.Rec. 15,793 (1977) (bill as passed by Senate). SOCM urges that, had Congress meant (c)(1) to apply to both "(a)(1)" and "(a)(2)" suits, the law as enacted would have retained the "[a]ny action pursuant to this section" formulation. We are unable to attach to the shift from "pursuant to this section" back to "violation of this Act" the

large significance SOCM attributes to the change. *See Drummond Coal Co. v. Watt,* 735 F.2d 469, 474 (11th Cir.1984) ("Unexplained changes made in committee are not reliable indicators of congressional intent."). We note, moreover, that throughout, Congress retained in (c)(1) the phrase "the surface coal mining operation complained of," which SOCM insists "makes no sense" in the context of an "(a)(2)" suit for failure to perform a mandatory duty. *See* Brief of Appellee SOCM at 16–17.

regulators, and nothing we have said obliterates that distinction. *Accord National Wildlife Fed'n v. Hodel,* 661 F.Supp. 473, 476 (E.D.Ky.1987) (in "(a)(2)" suit, "plaintiffs are required to identify particular sites or operations in this district where [Secretary] ha[s] failed to inspect or enforce [SMCRA]"). *See also Oklahoma Wildlife Fed'n v. Hodel,* 642 F.Supp. 569 (N.D.Okla.1986) (indicating that restrained and moderate reading of SMCRA § 520(a)(2) is in order, particularly in view of *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985)).

### B. *SMCRA's Allocation of Rulemaking Review*

As the *Two-acres* panel observed, in setting SMCRA's forum prescriptions for rulemaking review, Congress showed its "preference for local judicial review where the action potentially involves site-specific or local conditions." 725 F.2d at 1428. This preference, expressed in SMCRA § 526(a)(1), 30 U.S.C. § 1276(a)(1), informs and supports our reading of SMCRA § 520(c)(1), the citizen suit forum provision.

The Act's scheme for judicial review of rulemakings, set out in SMCRA § 526, is arranged on three territorial lines: national, state, and local. "Any action by the Secretary promulgating national rules ... shall be subject to judicial review in the United States District Court for the District of Columbia Circuit." 30 U.S.C. § 1276(a)(1). This provision for review of rules nationwide in scope is the sole instance in which SMCRA assigns litigation to the District of Columbia. *See, e.g., National Wildlife Fed'n v. Hodel,* 839 F.2d 694 (D.C.Cir.1988) (review of national regulations challenged in numerous respects by both environmental groups and groups representing coal industry). "Any action of the Secretary to approve or disapprove a State program or to prepare and promulgate a Federal program [for a State] shall be subject to judicial review by the United States District Court for the District which includes the capital of the State whose program is at issue." 30 U.S.C. § 1276(a)(1). "Any other action constituting rulemaking by the Secretary shall be subject to judicial

review only by the United States District Court for the District in which the surface coal mining operation is located." *Id.*

The SMCRA § 526(a)(1) scheme for review of rulemakings, like the SMCRA § 520(c)(1) citizen suit forum prescription, does not provide for choice. *Cf.* 30 U.S.C. § 816(a)(1) (authorizing judicial review of agency orders under Federal Mine Safety and Health Act in circuit where violation occurred *or* in D.C. Circuit); 29 U.S.C. § 660(a) (authorizing judicial review of agency decisions under Occupational Safety and Health Act in circuit in which violation occurred, where employer's principal office is located, *or* in D.C. Circuit). Because SMCRA § 526(a)(1) is directive, not permissive, courts have said the provision sets "subject matter jurisdiction." *See Virginia ex rel. Virginia Dep't of Conservation and Economic Dev. v. Watt,* 741 F.2d 37, 40 (4th Cir.1984), *cert. denied,* 469 U.S. 1198, 105 S.Ct. 983, 83 L.Ed.2d 984 (1985); *Drummond Coal Co. v. Watt,* 735 F.2d 469, 472–76 (11th Cir.1984) (both holding that suits for judicial review of the Secretary's actions in promulgating "national rules or regulations" may be maintained only in the District Court for the District of Columbia). *See also Amerikohl Mining, Inc. v. United States,* 899 F.2d 1210, 1214–15 (Fed.Cir.1990) (SMCRA § 526(a)(1) prescribes that national rules shall be subject to review in the District Court for the District of Columbia, and thereby excludes proceedings in Claims Court under 28 U.S.C. § 1491, the general provision for Claims Court jurisdiction over claims against United States).

### C. *Circuit Precedent Set in New Mexico ex rel. Energy and Minerals Dep't v. U.S. Dep't of Interior, 820 F.2d 441 (D.C.Cir.1987)*

This court, in *New Mexico,* analyzed SMCRA § 520(c)(1) in the same way our sister circuits analyzed SMCRA § 526(a)(1). *New Mexico* involved a claim—more precisely, a counterclaim—by the Navajo Tribe asserting that mines on certain lands in New Mexico were not subject to the state's regulatory authority under SMCRA. We

held that the counterclaim, which qualified as a citizen suit under SMCRA § 520, could not be entertained in the District of Columbia, in view of SMCRA § 520(c)(1)'s directive that such a suit may be maintained *only* in the district where the mines in question are located. Concerning the character of SMCRA's citizen suit and rulemaking review forum rules, 30 U.S.C. §§ 1270(c)(1), 1276(a)(1), we said: "From time to time, Congress has selectively supplied special limitations for the adjudication of special subjects." 820 F.2d at 446. Such prescriptions, we observed, when designed to confine litigation to a particular place exclusively, for concerns weightier than the defendant's convenience, are not venue rules "with immutable tones of waiver"; rather, they "ha[ve] been equated with a limitation of subject matter jurisdiction." *Id.*

To summarize, we have rejected SOCM's argument that SMCRA § 520(c)(1), the citizen suit forum rule, applies only to actions against mine operators, not to actions against the Secretary as regulator. We also reject, for the reasons just stated, the argument that the citizen suit forum rule is waivable by the parties' conduct or consent. This action, according to SMCRA's citizen suit prescriptions, thus may be brought only where mining operations complained of are located. 30 U.S.C. § 1270(a)(2) & (c)(1).

Concerning the alleged alternate bases under Title 28 (28 U.S.C. §§ 1331, 1337, 1361) for lodging this suit in the District of Columbia, *see supra* p. 1544, it suffices to recall "that even where Congress has not expressly stated that statutory jurisdiction is 'exclusive,' ... a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute." *Telecommunications Research and Action Center v. FCC,* 750 F.2d 70, 77 (D.C.Cir.1984); *see Drummond Coal Co.,* 735 F.2d at 475. Nor does the "savings clause" in SMCRA § 520(e), 30 U.S.C. § 1270(e), aid SOCM, for as the *Two-acres* panel explained, that clause preserves only rights to sue under laws other than SMCRA, and grants no

right to sue under the Act to compel the Secretary to perform mandatory duties. 725 F.2d at 1429–31.

### D. *The Breadth of Judicial Oversight*

We return, finally, to a concern we mentioned initially. *See supra* p. 1543. Outside the national rulemaking context, federal courts customarily deal in situation-specific litigation, and do not engage long-term in grand-scale supervision of an executive agency's administration of federal programs. *See Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985); *Women's Equity Action League v. Cavazos,* 906 F.2d 742 (D.C.Cir.1990). We have read SMCRA's less-than-crystalline citizen suit authorization in that light. As the *Two-acres* panel commented: if the economy of the broad-gauged civil action to remedy a nationwide problem is attractive, there are nevertheless compelling reasons supporting Congress' apparent preference for locally-oriented adjudication. 725 F.2d at 1428. Here, for example, adjudication where mining operations are located would "allow[ ] the operators more easily to become involved," permit "consideration of site-specific factors," and "distribute[ ] more evenly the judicial workload." *Id.* at 1428–29; *see National Wildlife Fed'n,* 661 F.Supp. at 476 (citing *Two-acres,* Kentucky district court dismissed an action brought under § 520(a)(2) alleging nationwide failure by federal and state regulatory authorities to administer and enforce SMCRA; court held that § 520(c)(1) applied to (a)(2) suits); *cf.* 30 U.S.C. § 1201(f) (referring to "diversity in terrain, climate, biologic, chemical, and other physical conditions in areas subject to mining operations").

Our examination of cases against regulators for failure to perform as mandated, whether under SMCRA, the FWPCA, or the Clean Air Act, reveals that the complaints commonly focus on the Secretary's conduct with regard to a particular facility or particular state program. *See, e.g., Golden Gate Audubon Society v. Army Corps of Engineers,* 700 F.Supp. 1549 (N.D.Cal.1988) (FWPCA (a)(2) suit regarding failure to assert jurisdiction over wetlands adjacent to San Leandro Bay); *Na-*

*tional Resources Defense Council, Inc. v. New York Dep't of Environmental Conservation,* 700 F.Supp. 173 (S.D.N.Y.1988) (Clean Air Act (a)(2) suit challenging EPA Administrator's failure to require revision of state implementation plan); *Citizen for a Better Environment v. Costle,* 515 F.Supp. 264 (N.D.Ill.1981) (Clean Air Act (a)(2) suit regarding Illinois and Indiana state implementation plans). We came upon no reported case, under any of these acts, in which another court has allowed an environmental group to maintain a citizen suit as far-reaching as SOCM's.[16]

### Conclusion

Resolving the close statutory construction question this case presents, we hold that Congress, in SMCRA § 520(c)(1), 30 U.S.C. § 1270(c)(1), established a special, nonwaivable forum rule for all citizen suits. Whether the complaint is against mine operators directly ("(a)(1)" actions) or against official enforcers ("(a)(2)" suits), the case may be maintained only in a district in which questioned mining activity is located.

Our decision does not reach back to the consent decree entered in 1985 in conformity with the original settlement agreement. The parties before us have not questioned that decree, which expired in 1990. NCA, we note, believed that its members' interests were not "adversely affected" by the litigation leading up to the 1985 decree until "rules promulgated in late 1988 and early 1989 broadened the operation of the AVS." Brief of Appellants National Coal Association and American Mining Congress at 5 n. 1. The proper forum for challenges to 1988 and 1989 national rules is indeed the District of Columbia, *see supra* p. 1550; NCA, accordingly, is pursuing in this district challenges to the rules alleged to cause its aggrievement. *National Wildlife Fed'n v. Lujan,* No. 88–3117 (D.D.C.).

We cannot countenance, however, the renewal of the citizen suit in the District of Columbia in 1989 and the ensuing district court decree approving the second settlement agreement. Based on our resolution of the scope of SMCRA § 520(c)(1), 30 U.S.C. § 1270(c)(1), in this direct appeal, we vacate the district court's September 5, 1990 order. Taking account of the unsettled question of the breadth of SOCM's standing, *see supra* p. 1546, and this opinion's indication of the need to alter the dimensions of the suit, we think dismissal without prejudice, rather than transfer, is in order. *See* 28 U.S.C. § 1631. We do not think it appropriate to occupy our district court, given these circumstances, with the task—likely to spark controversy—of determining whether, how, and where to transfer the case. We note, finally, in view of the Secretary's defense of the second settlement agreement as "fair, reasonable and consistent with law," that nothing in this opinion precludes OSM's maintenance and improvement of the AVS, and adherence to the agreement's terms, as a matter of official policy.

For the reasons stated, the district court's order, filed September 5, 1990, is vacated and the case is remanded with instructions to dismiss the action, without prejudice to further proceedings elsewhere.

*It is so ordered.*

---

**16.** The more traditional pattern we found is particularly noteworthy in view of the cases holding that the (c)(1) provisions in the FWPCA and the Clean Air Act do not limit (a)(2) suits under those Acts. *See supra* pp. 1547–48.